UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PUBLIC PATENT FOUNDATION, INC.,

    Plaintiff,

v.

McNEIL-PPC, INC.,

    Defendant.

UNITED STATES OF AMERICA,

    Intervenor.

09 Civ. 5471 (RJH)

# MEMORANDUM OF LAW OF THE UNITED STATES AS INTERVENOR DEFENDING THE CONSTITUTIONALITY OF 35 U.S.C. § 292

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2725

ALLISON D. PENN
Assistant United States Attorney

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS .........................................................................................................4

ARGUMENT................................................................................................................................5

POINT I   THE SUPREME COURT HAS RECOGNIZED THAT QUI TAM RELATORS HAVE ARTICLE III STANDING BASED ON INJURY TO THE UNITED STATES' SOVEREIGNTY..................................................................................5

POINT II   MANY PAST AND PRESENT QUI TAM STATUTES ALLOW RELATORS TO PROCEED BASED ONLY ON INJURIES TO SOVEREIGNTY ...................6

POINT III   RECENT DECISIONS BY OTHER DISTRICT COURTS DEMONSTRATE THAT INJURIES TO SOVEREIGNTY SHOULD BE SUFFICIENT TO CONVEY ARTICLE III STANDING TO SECTION 292 RELATORS.................8

POINT IV   STAUFFER WAS WRONGLY DECIDED........................................................9

CONCLUSION...........................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE**

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) ...........................................................................7

*Bonito Boats, Inc. v. Adkins,*
   489 U.S. 141 (1989).............................................................................................6

*Clontech Laboratories, Inc. v. Invitrogen Corp.,*
   406 F.3d 1347 (Fed. Cir. 2005).............................................................................6

*Federal Election Commission v. Akins,*
   524 U.S. 11 (1998)..............................................................................................10

*Harrington v. Ciba Vision Corp.,*
   No. 3:08- cv-251 (W.D.N.C. May 22, 2009)....................................................2, 8

*Harrison v. Westinghouse Savannah River Co.,*
   176 F.3d 776 (4th Cir. 1999) ................................................................................7

*Lear, Inc. v. Adkins,*
   395 U.S. 653 (1969).............................................................................................6

*Pequignot v. Solo Cup Co.,*
   640 F. Supp. 2d 714 (E.D. Va. 2009) ...............................................................2, 8

*Stauffer v. Brooks Brothers, Inc.,*
   615 F. Supp. 2d 248 (S.D.N.Y.)................................................................... passim

*U.S. ex rel. A+ Homecare, Inc. v. Medshares Management Group, Inc.,*
   400 F.3d 428 (6th Cir. 2005) ................................................................................7

*United States v. Rivera,*
   55 F.3d 703 (1st Cir. 1995)...................................................................................7

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
   529 U.S. 765 (2000)..................................................................................... passim

**STATUTES**

28 U.S.C. § 2403..........................................................................................................2

28 U.S.C. § 517............................................................................................................2

31 U.S.C. § 3729 .................................................................................................................. 8

31 U.S.C. § 3730(b)(1) ........................................................................................................ 8

35 U.S.C. § 292 ............................................................................................................ passim

35 U.S.C. § 292(b) .......................................................................................................... 2, 5

35 U.S.C. § 292 ("Section 292") ................................................................................. passim

**RULES AND REGULATION**

Federal Rule of Civil Procedure 12(b)(1) ............................................................................ 5

**PRELIMINARY STATEMENT**

Pursuant to 28 U.S.C. § 2403 and 28 U.S.C. § 517, and Federal Rule of Civil Procedure 24(a), the Attorney General has exercised his right to intervene in this case on behalf of the United States in order to defend the constitutionality of 35 U.S.C. § 292 ("Section 292").

Defendant McNeil-PPC, Inc. ("McNeil") moves to dismiss the Complaint brought by plaintiff Public Patent Foundation ("PubPat") pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that PubPat lacks standing to bring its false marking claim pursuant to 35 U.S.C. § 292(b) because it has not alleged an injury to itself or to the Government sufficient to satisfy Article III of the Constitution. Specifically, McNeil relies on *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248 (S.D.N.Y.), *appeals docketed*, Nos. 09-1428, 09-1430, and 09-1453 (Fed. Cir. July 7, and 16, 2009), to argue that the *qui tam* plaintiff must allege an injury, either to itself or the public at large, in order to establish federal jurisdiction. McNeil argues in its motion that "PubPat's complaint does not allege that McNeil has harmed or injured it or anyone else." See McNeil Memorandum of Law in Support of its Motion to Dismiss ("McNeil Br."), at 8. McNeil also argues that the plaintiff failed to allege an injury to the Government that might grant it standing to sue as an assignee of the Government's interest. Id. at 13.

Section 292(a) states that any person who commits specified acts of patent fraud, such as by affixing to a product a mark that falsely asserts that the item is patented "[s]hall be fined not more than $500 for every such offense." Section 292(b) provides that "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."

In arguing that the plaintiff lacks standing to sue because it has not asserted an injury sufficient to satisfy Article III's standing requirement, McNeil has effectively challenged the

constitutionality of the patent statute as applied to this plaintiff and similarly-situated plaintiffs. McNeil argues that, as a relator, PubPat must identify a harm that is "actual" and that an injury to the sovereign interest in seeing its laws obeyed would not suffice. *See* McNeil Br. at 12. In fact, no such allegation of injury is necessary to confer constitutional standing on the *qui tam* relator.

The Supreme Court in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771-78 (2000), explicitly recognized that the United States suffers an injury when its laws are violated. The Court wrote that it was "beyond doubt that the [relator's FCA] complaint asserts an injury to the United States," including an "injury to its sovereignty arising from violation of its laws." 529 U.S. at 771. And, as discussed further below, most of the *qui tam* statutes cited by the Court in its historical discussion of those statutes involved no proprietary injury to the United States. *See Vermont Agency*, 529 U.S. at 776-77 nn.5-7 (citing more than 15 early *qui tam* statutes). There is no reason to conclude that the Court's finding of Article III standing for "any person" who files suit under the *qui tam* provisions of the FCA would not apply equally to "any person" bringing suit pursuant to subsection 292(b) of the false marking statute at issue here. Moreover, Section 292(b) involves assignment of a chose in action to obtain a monetary penalty for patent mismarking, half of which will be paid to the relator and the other half to the United States. The monetary recovery itself provides a proprietary interest in the claim. Under such circumstances the premise that the injury and interest here is solely sovereign is inaccurate.

The conclusion that the sovereign injury is sufficient to confer standing on the Section 292(b) *qui tam* relator is supported by the decisions of other district courts. *See Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714 (E.D. Va. 2009); *Harrington v. Ciba Vision Corp.*, No. 3:08-

2

cv-251 (W.D.N.C. May 22, 2009) (transcript of oral decision attached to Declaration of Allison D. Penn). The court's decision in *Stauffer*, currently on appeal to the United States Court of Appeals for the Federal Circuit, is the only decision to find to the contrary, and the Government respectfully submits, is wrongly decided.

As explained more fully below, the *Stauffer* court misread *Vermont Agency* when it stated that the Supreme Court determined there that the required harm in False Claims Act cases "is simply 'the proprietary injury resulting from the alleged fraud.'" *Stauffer*, 615 F.2d at 254 (quoting *Vermont Agency*, 529 U.S. at 771). To the contrary, *Vermont Agency* provides support for the proposition that *either* an economic or a sovereign injury to the United States can be partially assigned to a relator to pursue in litigation, and thereby provide the requisite concrete stake in the controversy to support Article III standing. The *Stauffer* court overlooked the fact that many of the *qui tam* provisions cited by the Supreme Court in Vermont Agency were like Section 292(b) in a critical respect: they involved assignment to a private relator of the ability to pursue a suit for a penalty in order to vindicate the sovereign interests of the United States in obedience to federal laws.

Therefore, for the reasons set forth below, there is no doubt that a *qui tam* relator under Section 292 has Article III standing to sue based on the allegation that the statute has been violated. Specifically, the injury to the United States' sovereignty that follows from a violation of Section 292 is sufficient to establish Article III standing. For these reasons, this Court should deny Defendant McNeil's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing.

## STATEMENT OF FACTS

On or about June 15, 2009, plaintiff, the Public Patent Foundation ("PubPat"), a New York based not-for-profit corporation filed a Complaint alleging that McNeil violated 35 U.S.C. § 292 by marking several of its Tylenol® brand products with expired and invalid patents. *See* Complaint ("Compl.") at ¶¶ 7, 17-23. PubPat alleges that McNeil marks its products with these patents "for the purpose of deceiving the public into believing that [the products] are covered by each of the listed patents." Compl. ¶¶ 25-27. PubPat seeks the imposition of a fine against McNeil, one half to PubPat, and the other half to the United States, pursuant to 35 U.S.C. § 292(b). Compl. ¶ 3.

On or about October 5, 2009, McNeil moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), alleging, *inter alia*, that PubPat does not have Article III standing to pursue this case. *See* Memorandum in Support of McNeil's Motion to Dismiss ("McNeil Br."), at 9-14. Specifically, McNeil argues that PubPat lacks standing to sue because it has not alleged any injury to itself or the Government. *Id.* at 13-14. Relying on *Stauffer*, McNeil argues that PubPat "therefore lacks standing to proceed." *Id.* at 14 (quoting *Stauffer*, 615 F. Supp. 2d at 255).

Because McNeil's argument calls into question the constitutional status of Section 292's *qui tam* provisions, the United States, by letter dated October 29, 2009, sought to intervene to defend the statute's constitutionality. On November 3, 2009, this Court granted the United States' request to intervene and to file a brief in support of its position.

4

## ARGUMENT

### I. THE SUPREME COURT HAS RECOGNIZED THAT *QUI TAM* RELATORS HAVE ARTICLE III STANDING BASED ON INJURY TO THE UNITED STATES' SOVEREIGNTY.

The Supreme Court in *Vermont Agency* found that a *qui tam* relator under the False Claims Act ("FCA") has Article III standing to sue because he receives "a partial assignment of the Government's damages claim." 529 U.S. at 771-78. Although McNeil argues that the relator lacks Article III standing, the decision of the Supreme Court in *Vermont Agency* is dispositive of the issue. The Court first noted that it was "beyond doubt that the [relator's FCA] complaint asserts an injury to the United States — both the injury to its sovereignty arising from violation of its laws . . . and the proprietary injury resulting from the alleged fraud." 529 U.S. at 771. The Court then reasoned that the FCA effects a partial assignment of the Government's claim to the *qui tam* relator, and concluded "that the United States' injury in fact suffices to confer standing on [the relator]." 529 U.S. at 774. Moreover, the Court was "confirmed in this conclusion by the long tradition of *qui tam* actions in England and the American Colonies," which it then examined in some detail. 529 U.S. at 774-78. The Court found "this history well nigh conclusive with respect to the [standing] question," 529 U.S. at 777, and concluded that "[w]hen combined with the theoretical justification for relator standing discussed earlier, it leaves no room for doubt that a *qui tam* relator under the FCA has Article III standing." 529 U.S. at 778.

Although the *Vermont Agency* opinion dealt with the FCA, there is no indication that its finding of Article III standing for "any person" who files suit under the *qui tam* provisions of the FCA would not also apply equally to "any person" bringing suit pursuant to subsection 292(b) of the false marking statute at issue here. Indeed, the *Vermont Agency* Court grouped the FCA and

5

Section 292 together when it noted that they were two of four *qui tam* statutes that remain in force. 529 U.S. at 768 n.1.

The Court in *Vermont Agency* explicitly recognized that the United States suffers an injury when its laws are violated.[1] As noted above, the Court wrote that it was "beyond doubt that the [relator's FCA] complaint asserts an injury to the United States," including an "injury to its sovereignty arising from violation of its laws." 529 U.S. at 771. And, as discussed further below, most of the *qui tam* statutes cited by the Court in its historical discussion of those statutes involved no proprietary injury to the United States. *See Vermont Agency*, 529 U.S. at 776-77 nn.5-7 (citing more than 15 early *qui tam* statutes).

## II. MANY PAST AND PRESENT *QUI TAM* STATUTES ALLOW RELATORS TO PROCEED BASED ONLY ON INJURIES TO SOVEREIGNTY.

It is hardly novel to argue that a *qui tam* relator has Article III standing based solely on an injury to United States sovereignty. Indeed, the First Congress passed several *qui tam* statutes that did not even allow for the possibility of other types of injuries. For example, one statute

---

[1] Congress prohibits false marking in part because a properly marked patented article provides the public with "a ready means of discerning the status of intellectual property embodied in an article of manufacture or design." *Bonito Boats, Inc. v. Adkins*, 489 U.S. 141, 162 (1989). This is consistent with federal patent policy, which recognizes an "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969). False marking harms that public interest because it "misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356-57 (Fed. Cir. 2005) (footnote omitted).

6

allowed relators to sue for, and receive half of the fine for, failure to file a census return. *See Id.* at 777 n.6. Another gave relators the right to sue for, and receive half of the fine for, carriage of seamen without contract or illegal harboring of runaway seamen. *Id.* Still another allowed relators to sue for, and receive half the fine for, unlicensed trading with Indian tribes. *Id.* Against this historical backdrop, it is unsurprising that *qui tam* relators under Section 292 should gain standing based only on an injury to sovereignty.

Furthermore, this is not a strictly historical phenomenon. The False Claims Act, which is currently the most widely used *qui tam* statute, also allows relators to proceed based solely on injuries to sovereignty. The FCA's *qui tam* provision states that "[a] person may bring a civil action for a violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). To violate section 3729, a defendant needs only to present a fraudulent claim to the Government; the Government does not have to suffer a financial loss. 31 U.S.C. § 3729; *see, e.g., U.S. ex rel. A+ Homecare, Inc. v. Medshares Management Group, Inc.*, 400 F.3d 428, 446 (6th Cir. 2005) ("[R]ecovery under the FCA is not dependent upon the government's sustaining monetary damages.") (quoting *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426 (6th Cir. 2001)); *Bly-Magee v. California*, 236 F.3d 1014, 1017 (9th Cir. 2001) ("[A] *qui tam* plaintiff need not prove that the federal government will suffer monetary harm to state a claim under the FCA."); *Harrison v. Westinghouse Savannah River Co.* 176 F.3d 776, 785 n.7 (4th Cir. 1999) ("[T]here is no requirement that the government have suffered damages as a result of the fraud."); *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995) ("[T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment.").

7

Thus, the FCA authorizes *qui tam* actions even when the only injury suffered by the United States is an injury to its sovereignty. Likewise, Section 292 authorizes *qui tam* relators to bring suit whenever the statute is violated; there is no additional requirement in the statute that the United States must have suffered some financial loss. 35 U.S.C. § 292. Therefore, similar to the FCA, Section 292 confers standing to sue based on the injury to the United States' sovereignty.

### III. RECENT DECISIONS BY OTHER DISTRICT COURTS DEMONSTRATE THAT INJURIES TO SOVEREIGNTY SHOULD BE SUFFICIENT TO CONVEY ARTICLE III STANDING TO SECTION 292 RELATORS.

In *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714 (E.D. Va. 2009), the court addressed the precise issue of whether an injury to sovereign interest in and of itself was sufficient to confer standing on *qui tam* relators under Section 292 and concluded that it was. Observing that the Supreme Court had not distinguished between financial injury and sovereign injury in its discussion of assignment in *Vermont Agency*, the *Pequignot* court "decline[d] to adopt this distinction." *Id.* at 723 n.15. Similarly, the court in *Harrington v. CIBA Vision Corp.*, another Section 292 case, specifically rejected the defendant's "proposed dichotomy between the United States Government's proprietary and sovereign interests," and found that it was "insufficiently defined for this Court to hold that Congress may not assign a *qui tam* cause of action to a private individual when the United States Government has suffered injury to its sovereign interest." *See* Penn Decl., Exh. A (transcript of oral decision in *Harrington v. Ciba Vision Corp.*, No. 3:08-cv-251 (W.D.N.C. May 22, 2009) at 117).

8

### IV. *STAUFFER* WAS WRONGLY DECIDED

Defendant relies entirely upon *Stauffer v. Brooks Brothers, Inc.*, 615 F. Supp. 2d 248 (S.D.N.Y. 2009), to support its argument against Article III standing in this case. The Government contends that *Stauffer* was wrongly decided and has appealed that decision to the Court of Appeals for the Federal Circuit. The effect of the court's ruling in *Stauffer* is to deny standing to "any person" who does not allege a specific "injury to any individual competitor," to "the market" for the relevant product in general, or to "any aspect of the United States economy." 615 F Supp. 2d at 255. The United States believes that the *Stauffer* court wrongly concluded that in order to have standing the injury must be economic in nature, and that the allegation of "sovereign injury" to the United States based on a violation of its statute is insufficient to afford the plaintiff standing. *Stauffer*, 615 F. Supp. 2d at 254 n.5.

The *Stauffer* court made several errors. First, the court quoted *Vermont Agency* to support its assertion that the injury in an FCA case "is simply the 'proprietary injury resulting from the alleged fraud.'" *Id.* at 254 (quoting *Vermont Agency*, 529 U.S. at 771). The court thereby set up the FCA as an example of a *qui tam* statute where economic injury is inevitably present. As noted above, however, *see supra* Point II, this is not the case. Moreover, in quoting *Vermont Agency,* the *Stauffer* court omitted the preceding part of the sentence stating that the injury also consists of "the injury to [the United States'] sovereignty arising from the violation of its laws." 529 U.S. at 771. *Vermont Agency* does not provide support for the proposition that only an economic injury suffices to establish standing; it provides support for the proposition that *either* an economic injury or a sovereign injury would suffice.

9

Second, the *Stauffer* opinion in a footnote expressed "doubt[] that the Government's interest in seeing its laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a *qui tam* plaintiff's standing." 615 F. Supp. 2d at 254 n.5. To support this position, the court cited *Federal Election Commission v. Akins*, 524 U.S. 11, 24 (1998). *Akins*, however, is readily distinguishable. First, *Akins* did not involve a *qui tam* statute. And although the *Akins* Court did conclude that an "abstract" harm such as "injury to the interest in seeing that the law is obeyed ... deprives the case of the concrete specificity" necessary for standing, it did so to indicate that *individuals* could not assert this injury. *Id.* The *Akins* decision made no suggestion that the *Government* cannot assert its sovereign right to see its laws obeyed. Moreover, the *Stauffer* court's premise – that the injury and interest is solely sovereign – is inaccurate. Section 292(b) involves assignment of a chose in action to obtain a monetary penalty for patent mismarking, half of which will be paid to the relator and the other half to United States. Thus, the monetary recovery itself provides a proprietary interest in the claim.

Third, the *Stauffer* court incorrectly implied that, to support Article III standing, the underlying injury must be economic in nature and adversely impact an "individual competitor," "the market for bow ties," or "any aspect of the United States economy." *Stauffer*, 615 F. Supp. 2d at 255. But, under the district court's reasoning, not only does a relator lack standing to sue for patent mismarking, but the United States itself must perforce also lack standing because it has, in the *Stauffer* court's view, suffered no injury. If the *Stauffer* court's theory were correct, there would accordingly be a serious question whether the United States itself could bring an action in court to enforce the patent mismarking law.

Fourth, the *Stauffer* court's analysis ignored the fact that Section 292(b) is like several of the *qui tam* provisions passed by the First Congress, and relied on by the Supreme Court in *Vermont Agency*, 529 U.S. at 776 n.6, as historical validation of *qui tam* actions. None of these statutes involved a traditional proprietary injury to the United States or to the person bringing the suit.

With the above in mind, *Stauffer* is hardly the final word on Article III standing under the *qui tam* provisions of Section 292, and reliance on *Stauffer* alone is insufficient to support a claim that the relator lacks Article III standing to sue under Section 292.

## CONCLUSION

For the foregoing reasons, McNeil's challenge to the constitutionality of 35 U.S.C. § 292 should be rejected, and the Court should deny McNeil's motion to dismiss the Complaint pursuant to Fed. R. Civ. P 12(b)(1) for lack of standing.

Dated:  New York, New York
        November 30, 2009

>                    Respectfully submitted,
>
>                    PREET BHARARA
>                    United States Attorney
>                    Attorney for the United States of America
>
> By:    /s/
>        ALLISON D. PENN
>        Assistant United States Attorney
>        86 Chambers Street, Third Floor
>        New York, New York 10007
>        Tel. (212) 637-2725