**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PUBLIC PATENT FOUNDATION, INC.,

Plaintiff,

- against -

McNEIL-PPC, Inc.,

Defendant.

Civil Action No. 09-CV-5471-RJH

ECF Case

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MCNEIL'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Steven A. Zalesin
Irena Royzman
Ryan Sirianni
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Email: sazalesin@pbwt.com

*Attorneys for Defendant McNeil-PPC, Inc.*

Of counsel:

Anne Martinson, Esq.
Johnson & Johnson

TABLE OF CONTENTS

Page

I. THE CONSTITUTIONALITY OF SECTION 292 IS NOT AT ISSUE ............................1

A. McNeil's Motion Challenges PubPat's Pleading, Not Section 292.........................1

B. The Government Has No Right To Intervene In this Action..................................2

II. PUBPAT LACKS STANDING TO BRING THIS ACTION............................................3

A. PubPat Has No Standing In its Own Right ............................................................3

B. PubPat Has No Standing as a *Qui Tam* Plaintiff.....................................................5

1. PubPat Has Not Alleged the Requisite Injury In Fact ................................5

2. Neither the False Claims Act Nor Repealed *Qui Tam* Statutes Support Elimination of the Injury in Fact Requirement ...........................................7

3. The Government's Financial Interest in the Outcome of this Action Does Not Confer Standing on PubPat..................................................................9

4. *Stauffer* Follows Controlling Precedent......................................................9

III. PUBPAT'S COMPLAINT DOES NOT ADEQUATELY ALLEGE INTENT................10

IV. THE PRODUCTS AT ISSUE ARE NOT UNPATENTED ARTICLES..........................13

CONCLUSION..................................................................................................................15

TABLE OF AUTHORITIES

CASES Page(s)

*Allen v. Wright*,
468 U.S. 737 (1984)....................6, 10

*Ansul Co., v. Uniroyal, Inc.*,
306 F. Supp. 541 (S.D.N.Y. 1969)....................13

*Arcadia Machine & Tool Inc., v. Sturm, Ruger & Company, Inc.*,
786 F.2d 1124 (Fed. Cir. 1986)....................11

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009)....................11, 12

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001)....................7, 8

*Chicago & Grand Trunk R. Co. v. Wellman*,
143 U.S. 339 (1892)....................10

*Clontech Labs., Inc. v. Invitrogen Corp.*,
406 F.3d 1347 (Fed. Cir. 2005)....................11, 14

*Conn. v. Physicians Health Servs. of Conn., Inc.*,
287 F.3d. 110 (2d Cir. 2002)....................5

*Douglas v. Wal-Mart Stores, Inc.*,
2005 WL 3234629 (E.D. Pa. Nov. 30, 2005)....................11

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)....................12

*FEC v. Akins*,
524 U.S. 11 (1998)....................6, 7, 10

*FMC Corp. v. Control Solutions, Inc.*,
369 F. Supp. 2d 539 (E.D. Pa. 2005)....................12, 13

*Genlyte Thomas Group LLC v. National Servs. Indus.*,
262 F. Supp. 2d 753 (W.D. Ky. 2003)....................14

*Goplen v. 51job, Inc.*,
453 F. Supp. 2d 759 (S.D.N.Y. 2006)....................4

*Kemin Foods, L. C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*,
464 F.3d 1339 (Fed. Cir. 2006).....11

*Keystone Mfg. Co. v. Jaccard Corp.*,
394 F. Supp. 2d 543 (W.D.N.Y. 2005).....14

*Max Impact, LLC, v. Sherwood Group*,
2009 WL 2448108 (S.D.N.Y. August 10, 2009).....11

*Moore North America, Inc., v. Poser Forms, Inc.*,
2000 WL 1480992 (D. Del. Sept 29, 2000).....14

*Pequignot v. Solo Cup Co.*,
640 F. Supp. 2d 714 (E.D. Va 2009).....6, 14

*Stauffer v. Brooks Bros., Inc.*,
615 F. Supp. 2d 248 (S.D.N.Y. 2009)..... *passim*

*Stauffer v. Brooks Brothers, Inc.*,
2009 WL 1675397 (S.D.N.Y. June 15, 2009).....2, 3

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998).....5, 6, 9, 10

*Summers v. Earth Island Inst.*,
129 S.Ct. 1142 (2009).....1, 4, 5, 10

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008).....3

*U.S. v. Rivera*,
55 F.3d 703 (1st Cir. 1995).....8

*Vermont Agency of Nat'l Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000)..... *passim*

*In re WorldCom Sec. Litig.*,
308 F. Supp. 2d 338 (S.D.N.Y. 2004).....4

**STATUTES AND RULES**

35 U.S.C. § 292..... *passim*

Fed. R. Civ. P. 8.....11

Fed. R. Civ. P. 9 .......... 12

Fed. R. Civ. P. 24 .......... 2

Pursuant to the Court's Order dated November 12, 2009, defendant McNeil-PPC, Inc. ("McNeil") respectfully submits this reply memorandum in further support of its motion to dismiss the complaint of plaintiff Public Patent Foundation, Inc. ("PubPat") for lack of standing and failure to state a claim upon which relief may be granted, and to respond to the brief filed by the Government in opposition to McNeil's motion.

## I. THE CONSTITUTIONALITY OF SECTION 292 IS NOT AT ISSUE

### A. McNeil's Motion Challenges PubPat's Pleading, Not Section 292

In its opening brief, McNeil demonstrated that PubPat's complaint is deficient as a matter of law because it fails to allege any injury in fact. Unable to defend the contents of its pleading, PubPat attempts to recast McNeil's argument as something it is not. According to PubPat, by moving to dismiss the complaint in this action McNeil has somehow challenged the constitutionality of the patent marking statute. D.I. 18 at 5. The Government advances the same theory. *See* D.I. 22 at 1-2 ("In arguing that the plaintiff lacks standing to sue because it has not asserted an injury sufficient to satisfy Article III's standing requirement, McNeil has effectively challenged the constitutionality of the patent statute as applied").

This assertion is concocted out of thin air. McNeil's motion does not challenge the constitutionality of section 292 in any respect. The motion is based on the deficiencies of PubPat's pleading. All plaintiffs, including *qui tam* plaintiffs, must satisfy the "irreducible constitutional minimum of standing." *Vermont Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *see also Summers v. Earth Island Inst.*, 129 S.Ct. 1142, 1151 (2009) ("the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute"). In the context of a section 292 claim, standing requires a plaintiff to plead and ultimately prove an actual or imminent injury to itself, the Government or the public as a result of intentional false marking. *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248, 255

(S.D.N.Y. 2009). PubPat's pleading does not meet these threshold requirements, and that is what McNeil's motion is about. Testing the sufficiency of a complaint against the requirements of the statute and established case law does not put the "constitutionality of any Act of Congress into question." *Stauffer v. Brooks Brothers, Inc.*, 2009 WL 1675397, *3 (S.D.N.Y. June 15, 2009).

PubPat's complaint does not allege an injury in fact to anyone and therefore does not establish the constitutional prerequisite of standing. In short, it is PubPat's pleading, not section 292, that runs afoul of Article III.

**B. <u>The Government Has No Right To Intervene In this Action</u>**

Because McNeil's motion does not "call into question the constitutional status of Section 292's *qui tam* provisions," D.I. 22 at 4, the Government has no basis to intervene in this case. The Government contends that it has exercised its statutory right to intervene in order to "defend the constitutionality of 35 U.S.C. § 292," *id*. at 1, and that "this Court granted the United States' request to intervene and to file a brief in support of its position." *Id*. at 4.

In fact, the Government has not moved to intervene in this action as of right pursuant to Fed. R. Civ. P. 24 (a) or on any other basis. Moreover, there is nothing in the Patent Act that gives the Government "the opportunity to take over the action and proceed in its own right." *Stauffer*, 2009 WL 1675397 at *2. As a consequence, "should the Government wish to intervene in a section 292 suit, it must seek leave to do so pursuant to Rule 24 …." *Id*. Such a motion would lack merit because McNeil has not put the "constitutionality of any Act of Congress into question." *Id*.

Indeed, when the Government moved to intervene in *Stauffer* on the same basis, the court denied the request. As Judge Stein explained:

> The Government's argument – that the "effect of the Court's ruling is to hold the statute unconstitutional *as applied*" – represents only its own aggressive interpretation of an Opinion which did no more

> than evaluate the complaint and construe the relevant statute consistent with established case law to find that [Stauffer] on these facts lacked standing to proceed.

*Id*. (citation omitted).

The Government's identical position in this case should be similarly rejected. The evaluation of PubPat's complaint with respect to Article III's standing requirements is not a challenge to the constitutionality of section 292. It is a challenge to a complaint that is legally deficient because it alleges no injury in fact.

## II. PUBPAT LACKS STANDING TO BRING THIS ACTION

### A. PubPat Has No Standing In its Own Right

As demonstrated in McNeil's opening brief (D.I. 11 at 7-13), PubPat has not sustained any injury in fact, and does not allege any such harm. Having failed to plead any injury in its complaint, PubPat attempts to articulate one in its opposition papers. It argues that, as a general proposition, false patent marking offers "potential advantages to the mis-marker" and creates the "potential to negatively impact the public." D.I. 18 at 9. It posits that the false marking statute protects the public from misleading information that a product "is controlled by a single party, or is better or more innovative that other products" *Id*. at 10. And it contends that false marking has a "chilling effect" on unidentified competitors and "risks decreasing the incentive to innovate." *Id*. at 10-11. PubPat then claims that it represents the public at large, and so these vague and speculative harms directly injure PubPat's interests. *Id*. at 9.

As a threshold matter, there has been no allegation, and certainly no showing, that PubPat is authorized to act as a vicarious avenger of the public interest in the enforcement of the patent laws. But even if it were, none of PubPat's newly-minted arguments would cure the deficiency in its pleading, for the simple reason that none of them are alleged in the complaint. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 305 (S.D.N.Y. 2008) ("Plaintiffs

may not cure pleading defects by including new allegations in their opposition memorandum"); *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774 (S.D.N.Y. 2006) (same); *In re WorldCom Sec. Litig.*, 308 F. Supp. 2d 338, 345 (S.D.N.Y. 2004) (same).

Moreover, even if these hypothesized injuries had been included in PubPat's pleading, they would not suffice to confer standing on PubPat, either in its own right or as a *qui tam* plaintiff, because they are both "conjectural" and "hypothetical." *Summers*, 129 S.Ct. at 1149. They do not constitute the "concrete, particularized injury in fact" required for standing. *Id*. at 1150. As the Supreme Court has held, standing "is not 'an ingenious academic exercise in the conceivable' … [but instead] requires a factual showing of perceptible harm." *Id*. at 1152.

PubPat does not – and cannot – allege "an actual injury to any individual competitor, to the market for [acetaminophen products], or to any aspect of the United States economy." *Stauffer*, 615 F. Supp. 2d at 255. Nor does PubPat allege the requisite actual or imminent harm to any member of the public it claims to represent. Instead it offers "conclusory statements … insufficient to establish anything more than the sort of 'conjectural or hypothetical harm' that the Supreme Court instructs is insufficient." *Id*. "That some competitor might somehow be injured at some point, or that some component of the United States economy might suffer some harm through defendants' conduct is purely speculative and plainly insufficient to support standing." *Id*.

Because there is no genuine injury to allege, PubPat ultimately asks the Court to uphold its complaint even if there is "no actual harm" and "no actual harm can be proven to have occurred." D.I. 18 at 12. This is a concession that there is no standing in this case and no basis on which to proceed. Federal courts are not authorized to hear disputes in which there is no actual or imminent harm. "Article III of the Constitution restricts [judicial power] to the

traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of the law." *Summers*, 129 S.Ct. at 1148; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-3 (1998) ("First and foremost, there must be alleged (and ultimately proved) an 'injury in fact'…."). Without an injury in fact, there is no federal jurisdiction.[1]

**B. PubPat Has No Standing as a *Qui Tam* Plaintiff**

**1. PubPat Has Not Alleged the Requisite Injury In Fact**

For the same reasons it has no standing in its own right, PubPat likewise has no standing to sue as a *qui tam* plaintiff. PubPat has not alleged an actual or imminent injury to the Government or the public. Because it has not established that *anyone* has standing, PubPat cannot proceed on the Government's or the public's behalf. *Stauffer*, 615 F. Supp. 2d at 255.

PubPat's reliance on *Vermont Agency* to support a contrary conclusion is misplaced. *Vermont Agency* holds that a *qui tam* plaintiff has standing to sue as an assignee of a Government claim only where the Government has suffered an "injury in fact." *Vermont Agency*, 529 U.S. at 773-74. Put differently, "*Vermont Agency* grants an assignee plaintiff standing only insofar as the 'claim' deemed to be assigned meets constitutional standing requirements." *Stauffer*, 615 F. Supp. 2d at 254 (citing *Conn. v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d. 110, 117 n.8 (2d Cir. 2002)).

PubPat attempts to get around this requirement by arguing that the Government has a "sovereign interest" in seeing its laws enforced, and that this interest has been harmed because "Defendant has violated 35 U.S.C. § 292 (a)." D.I. 18 at 6. In doing so, PubPat relies

---

[1] PubPat argues that injury in fact is not required for a section 292 claim because "actual harm" is not recited in the statute. D.I. 18 at 13. This turns the law of standing on its head. Article III standing is a threshold requirement that any plaintiff in any action must meet. *Vermont Agency*, 529 U.S. at 771. The statute need not recite such a requirement – it is a constitutional prerequisite.

upon a recent decision in the Eastern District of Virginia, *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714 (E.D. Va 2009). The court in *Pequignot* did not cite a single case in support of its conclusion that an injury "only to [] sovereignty" is sufficient to establish standing. 640 F. Supp. 2d at 728. In fact, an "abstract" harm such as that cited by the court in *Pequignot* is insufficient. *Allen v. Wright*, 468 U.S. 737, 751, 754 (1984) (constitutional standing requirements are not met by "'the abstract injury in nonobservance of the Constitution'") (citation omitted); *see also Stauffer*, 615 F. Supp. 2d at 254 n.5 ("[a]n 'abstract' harm such as 'injury to the interest in seeing that the law is obeyed … deprives the case of the concrete specificity'" necessary for standing (quoting *FEC v. Akins*, 524 U.S. 11, 24 (1998)); *Steel*, 523 U.S. at 107 (interest in seeing "that the Nation's laws are faithfully enforced" is not a cognizable Article III injury).

The Government's argument in this regard fares no better. It contends that standing in a section 292 action can be "based on the allegation that the statute has been violated." D.I. 22 at 3. According to this theory, the Government's sovereign interest in seeing its laws obeyed will *always* give rise to standing in a *qui tam* case. This is incorrect. *Qui tam* actions are not exempt from the constitutional standing requirements of Article III. Some injury in fact is needed before a case can proceed.

The Government's argument that its sovereign interest in law enforcement confers standing on any *qui tam* plaintiff rests upon a strained reading of a single sentence in *Vermont Agency*. D.I. 22 at 5-6, 9. The passage to which the Government points says only that an "injury to its sovereignty" suffices "to support a ***criminal*** lawsuit by the Government . . . ." 529 U.S. at 771 (emphasis added). The very same sentence states that the injury that gives rise to a *qui tam* plaintiff's standing in a ***civil*** action – such as the False Claims Act (FCA) claim at issue in *Vermont Agency* – is "the proprietary injury resulting from the alleged fraud." *Id.* In other

words, it was the Government's ***economic*** interest in redressing or preventing fraudulent claims for its funds, not its sovereign interest in law enforcement, that supplied the requisite "injury in fact" in *Vermont Agency*. *See Stauffer*, 615 F. Supp. 2d at 254, 254 n.5 (rejecting same argument based on *Vermont Agency* and noting that "the Court doubts that the Government's interest in seeing its laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a *qui tam* plaintiff's standing"); *see also FEC*, 524 U.S. at 24 ("abstract" harm such as "injury to the interest in seeing that the law is obeyed ... deprives the case of the concrete specificity" necessary for standing) (collecting cases).

**2. Neither the False Claims Act Nor Repealed *Qui Tam* Statutes Support Elimination of the Injury in Fact Requirement**

Contrary to the Government's assertions, neither FCA jurisprudence nor the discussion of the history of *qui tam* actions in *Vermont Agency* (D.I. 22 at 6-8) excuses PubPat's failure to allege an injury in fact.

The FCA cases cited by the Government stand for the unremarkable proposition that, to state a claim under that statute, a plaintiff need not allege that the Government is at risk of a permanent out-of-pocket loss. *Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001), is illustrative. That case involved a federal program that directed the Government to disburse the entire amount of allocated funds to various state recipients. Plaintiff, suing as a *qui tam* relator, alleged that the State of California had received a portion of the funds under false pretenses. The defendant argued that there was no injury in fact to the Government because, absent the alleged misconduct, the money would have gone to another state, and so the Government would have spent no less on the program. *Id*. at 1016-1017.

The Ninth Circuit rejected this theory, noting that if plaintiff were to prevail on her "claim of theft, resulting damages would go to the federal government even if the federal

government would then be obligated to reallocate these funds to another state." *Id*. at 1017. In other words, the Government suffered an injury in fact even though it eventually would spend the recovered money on something else – which can be said of virtually *any* government funds. Nothing about this holding suggests that courts are authorized to entertain *qui tam* actions where, as here, no injury of any kind is alleged.

The Government is also incorrect in its assertion that, absent an actual payout of funds, any injury to the Government in an FCA action is necessarily an injury to its sovereignty and nothing more. Article III standing can be premised on the threat of imminent, as well as actual, harm. Indeed, "fraud by Government contractors is best prevented by attacking the activity that presents the risk of wrongful payment, and not by waiting until the public fisc is actually damaged." *U.S. v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995). A claim under the FCA that aims to prevent imminent misappropriation of Government funds raises an injury in fact. PubPat's complaint does not.

The Government's reliance on the discussion of the history of *qui tam* actions in *Vermont Agency* is similarly misplaced. D.I. 22 at 6-7. In upholding the *qui tam* relator's complaint in that case, the Court cited "the long tradition of *qui tam* actions in England and the American Colonies." *Vermont Agency*, 529 U.S. at 774. The Court pointed to these historical precedents to demonstrate that such suits have long been deemed amenable to judicial process provided that other prerequisites – including an injury in fact – are met. *Id*. at 774-778. The Court did not suggest that such actions can proceed when no injury is alleged. Indeed, its holding was to the contrary. *Id*. at 771-74.

Equally unconvincing is the Government's argument that a number of repealed *qui tam* statutes permitted suits based upon an injury exclusively to United States sovereignty.

According to the Government, *qui tam* statutes from the 18th century that allowed suit for failure to file a census return, illegal harboring of runaway seamen, and unlicensed trading with Indian tribes "did not even allow for the possibility of other types of injuries." D.I. 22 at 6-7. This assertion is groundless. One can easily conceive of a concrete injury in fact in each of these situations.[2] Nothing about these repealed *qui tam* statutes excuses PubPat's failure to plead any injury here.

### 3. The Government's Financial Interest in the Outcome of this Action Does Not Confer Standing on PubPat

The Government also attempts to find standing for PubPat based upon its own financial interest in the outcome of this action (*i.e.*, half of the sought-after bounty). It contends that the "monetary recovery itself provides a proprietary interest in the claim." D.I. 22 at 2, 10.

It is well-established that a financial interest in the outcome of a lawsuit does not give rise to an injury in fact. D.I. 11 at 13. Although the Government, just as PubPat, has a financial interest in this action, "the same might be said of someone who has placed a wager upon the outcome." *Vermont Agency*, 529 U.S. at 772 (collecting cases). "An interest unrelated to the injury in fact is insufficient to give a plaintiff standing." *Id*. As the Supreme Court has made clear, "an interest that is merely the 'byproduct' of the suit cannot give rise to a cognizable injury for Article III standing purposes." *Id*. at 773; *see also Steel*, 523 U.S. at 107.

### 4. *Stauffer* Follows Controlling Precedent

Finally, both PubPat and the Government pretend that the decision in *Stauffer* is unique in that it requires an injury in fact. D.I. 18 at 8; D.I. 22 at 9-10. To the contrary, Judge Stein's decision is well-grounded in Supreme Court precedent that requires injury in any case

[2] For instance, unlicensed trading with an Indian tribe would deprive a license holder of the benefit of his license, and would injure the Government by failure to pay the requisite licensing fee.

invoking federal jurisdiction, including *qui tam* actions. *Stauffer,* 615 F. Supp. 2d at 253 (citing *Vermont Agency*, 529 U.S. at 771). The ruling also follows the Supreme Court's mandate that the injury in fact requirement "cannot be removed by statute." *Id*. (quoting *Summers*, 129 S.Ct. at 1152). That hardly makes *Stauffer* "a complete outlier." D.I. 18 at 8.

It is hornbook law that federal courts may not adjudicate abstract, generalized grievances. *Allen*, 468 U.S. at 751. Rather, "[f]ederal courts may exercise power only 'in the last resort, and as a necessity." *Id*. at 752 (citing *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892)). The court in *Stauffer* followed established precedent and rejected the proposition that an "'abstract' harm such as 'injury to the interest in seeing that the law is obeyed'" can suffice for standing. 615 F. Supp. 2d at 254 n.5, quoting *Akins*, 524 U.S. at 24.[3]

PubPat argues that the Federal Circuit has previously found standing in section 292 actions absent an injury in fact. No case, including those cited by PubPat, supports this proposition. The Federal Circuit has never addressed standing in the context of section 292. Nor has it allowed actions to proceed based on injury to the Government's sovereign interest alone. The cases it has decided (and to which PubPat refers) have typically involved claims by competitors who clearly had standing to sue. There is every reason to think that the Federal Circuit, just as the court in *Stauffer,* will follow Supreme Court precedent and require a *qui tam* plaintiff to allege a concrete injury in fact.

## III. PUBPAT'S COMPLAINT DOES NOT ADEQUATELY ALLEGE INTENT

As demonstrated in McNeil's opening brief (D.I. 11 at 14-17), PubPat has pled no facts that plausibly suggest that McNeil acted with an intent to deceive the public, a critical

---

[3] The Government's attempt to distinguish *Akins* on the basis that it did not involve a *qui tam* action is unavailing. D.I. 22 at 10. *Qui tam* actions require an injury in fact. An abstract injury to the interest in seeing laws enforced is not enough. *Akins*, 524 U.S. at 24; *see also Steel*, 523 U.S. at 107 (injury to the interest in seeing "that the Nation's laws are faithfully enforced" is not a cognizable injury in fact).

element of section 292. Having failed to comply with Rule 8 or *Ashcroft* v. *Iqbal*, 129 S.Ct. 1937, 1951-52 (2009) ("*Iqbal*"), PubPat attempts to read the element of intent out of section 292. Its approach has no support in the statute or case law.

"By its terms, the statute seeks to protect the public not simply from false marking of unpatented articles but instead false marking that is fraudulent, deceptive, and intentional." *Stauffer*, 615 F. Supp. 2d at 254. "[T]here can be no violation of § 292 absent an evidentiary showing that the false marking or mismarking was 'for the purpose of deceiving the public.'" *Arcadia Machine & Tool Inc., v. Sturm, Ruger & Company, Inc*., 786 F.2d 1124, 1125 (Fed. Cir. 1986); *see also Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (holding that there is no strict liability for false marking).

Contrary to PubPat's assertions, conclusory allegations that McNeil "knows, or reasonably should know" that its markings are false (D.I. 18 at 16-17) do not meet the pleading requirements. *Douglas v. Wal-Mart Stores, Inc.*, 2005 WL 3234629, *7 (E.D. Pa. Nov. 30, 2005) (dismissing counterclaim under § 292 where alleged intent to deceive the public was premised on nothing more than "experience[] in intellectual property litigation"), *aff'd*, 208 Fed. Appx. 943 (Fed. Cir. 2006); *Max Impact, LLC, v. Sherwood Group*, 2009 WL 2448108, *1 (S.D.N.Y. August 10, 2009) (counterclaim for false patent marking could not "withstand a 12(b)(6) motion to dismiss" where "[n]othing in the allegations sufficiently suggests that [the patentee] acted with a deceptive purpose in marking its [product] as patented"); *Kemin Foods, L. C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 464 F.3d 1339, 1355 (Fed. Cir. 2006) ("deceptive purpose [is] necessary to trigger liability under the false marking statute"). Indeed, *Iqbal* itself makes plain that a complaint (such as PubPat's) that fails to plead facts that plausibly suggest the requisite state of mind will be dismissed at the pleadings stage. *Iqbal*, 129 S.Ct at

1951 (affirming dismissal where "complaint does not contain any factual allegation sufficient to plausibly suggest [defendant's] discriminatory state of mind").

PubPat argues that rote recitation of the elements of the statute without any factual elaboration is sufficient here because there is "no [] conceivable motivation" for not removing expired patents from the products they once covered, other than to deceive the public. D.I. 18 at 16. This is nonsense. There are myriad reasons why a product may be marked with an expired patent, including most obviously inadvertence or oversight. Alternatively, a party might choose to continue to mark its products after patent expiration based upon case law that holds that such markings are not unlawful, and indeed are desirable. *See FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 584 (E.D. Pa. 2005) ("The Court finds no reason why FMC may not display its [expired] patent number to inform the public of where to acquire the informational and teaching *quid pro quo* that underlie the granting of patent protection").[4]

In addition to its failure to comply with Rule 8 and *Iqbal*, McNeil has demonstrated that PubPat's complaint fails to meet the requirements of Rule 9(b). PubPat attempts to argue that Rule 9(b) should not apply because "§ 292 is an intent statute." D.I. 18 at 18. This argument ignores the fact that "[a]lthough 'knowledge' and 'intent' may be averred generally [under Rule 9(b)], [Federal Circuit] precedent, like that of several regional circuits [including the Second Circuit], requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). PubPat offers no plausible reason why these standards are not applicable here.

[4] PubPat is not helped by its new theory that McNeil marks its products with expired patents to "avoid[] drawing attention to Tylenol's safety problems." D.I. 18 at 2. This bald allegation is nowhere to be found in PubPat's complaint, and therefore is not at issue on this motion. In any event, it is nonsensical and could not serve to plausibly establish an intent to deceive even if it were included in PubPat's pleading.

## IV. THE PRODUCTS AT ISSUE ARE NOT UNPATENTED ARTICLES

As demonstrated in McNeil's opening brief (D.I. 11 at 17-21), PubPat's complaint also fails to state a claim because the false marking statute applies only to unpatented articles. All of the products at issue were in fact patented in the United States. PubPat does not dispute that, had it done the barest of inquiries, it would have discovered that Tylenol® Geltabs are covered by a U.S. patent to this day. D.I. 18. All of the accused products are also protected by a foreign patent.[5] Because all of the products are indisputably patented, PubPat does not even address how McNeil's statements on its Web site or on the radio that Tylenol® products include patented technology could be anything other than true.

PubPat contends that it nonetheless has an actionable claim because "at least the markings of expired patent numbers qualify as false." D.I. 18 at 21. The problem with PubPat's argument is twofold. First, as noted above, there is nothing "false" about displaying expired patent numbers on a product they once covered. Rather, it provides information to the public, including McNeil's competitors, about what the product is or how it is made. *FMC*, 369 F. Supp. 2d at 584 ("FMC's patent … expired in 1997. The Court finds no reason why FMC may not display its patent number to inform the public of where to acquire the informational and teaching *quid pro quo* that underlie the granting of patent protection"). Second, by its terms, the false patent marking statute applies only to "unpatented article[s]" and nothing else. PubPat in effect asks the Court to "disregard the plain language of this statute which, being penal in nature, must be strictly construed." *Ansul Co., v. Uniroyal, Inc.*, 306 F. Supp. 541, 565-66 (S.D.N.Y. 1969), *rev'd in part on other grounds*, 448 F.2d 872 (2d Cir. 1971) (dismissing complaint where

---

[5] PubPat attempts to confuse matters by asserting that the claims of the U.S. (the '522) and foreign (Canadian) patents are not identical (D.I. 18 at 22). While the Canadian patent may have additional claims, it has *all* of the claims in the '522 patent and therefore covers *all* of the same subject matter.

two of four patents included in marking did not cover the product). There is no basis to apply section 292 to the patented articles at issue here.

PubPat claims that its approach is supported by *Clontech* and *Pequignot*. D.I. 18 at 19-20. But *Clontech* involved articles that were not covered by any patent. It did not hold that a patented article should be considered unpatented within the meaning of the statute. *Pequignot* likewise did not hold that an article protected by a patent (such as the products at issue here) is unpatented. Indeed, PubPat has not cited a single case for the proposition that a product covered by a patent should be considered an unpatented article. To the contrary, "[c]ourts have consistently construed 35 U.S.C. § 292 as not being violated by a patentee who marks patented articles with more patents than actually cover the item." *Genlyte Thomas Group LLC v. National Servs. Indus*., 262 F. Supp. 2d 753, 756 (W.D. Ky. 2003) (quoting *Moore North America, Inc., v. Poser Forms, Inc.*, 2000 WL 1480992, *2 n.2 (D. Del. Sept 29, 2000).

PubPat also argues that foreign patents should not be considered in determining whether an article is unpatented. D.I. 18 at 22-24. But "[s]ection 292 does not differentiate between U.S. and foreign patents." *Keystone Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 565-66 (W.D.N.Y. 2005). Courts consider both types of patents to determine whether an article is "unpatented" within the meaning of the statute. D.I. 11 at 19.

Because none of the products at issue in PubPat's complaint is "unpatented," PubPat's complaint must be dismissed.

**CONCLUSION**

For the foregoing reasons, and those stated in its opening brief, McNeil respectfully requests that the Court grant its motion and dismiss PubPat's complaint.

Dated: December 11, 2009

Respectfully submitted,

By: *<u>/s/ Steven A. Zalesin</u>*

Steven A. Zalesin
Irena Royzman
Ryan Sirianni
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Email: sazalesin@pbwt.com

*Attorneys for Defendant McNeil-PPC, Inc.*

Of counsel:

Anne Martinson, Esq.
Johnson & Johnson